A00A0233. INTERNATIONAL BUSINESS MACHINES
CORPORATION v. KEMP et al.
(536 SE2d 303)

BLACKBURN, Presiding Judge.
International Business Machines Corporation (IBM) appeals from the trial court's grant of Barbara J. Kemp, Maria G. Wilson and

---

[12] Id.

Roger Wilson's (plaintiffs) motion for class certification. IBM contends that the trial court erred by: (1) holding that New York law governs the fraud claim of all potential class members; (2) holding that New York law governs the contract claim of all potential class members; (3) granting class certification where the claims lack commonality; and (4) granting class certification prior to determining whether plaintiffs' claims were preempted by federal law. Because the trial court based its grant of class certification on erroneous determinations of the law governing potential class members' claims, we reverse in part, vacate in part and remand the case.

## THE FACTS

IBM is headquartered in New York and has offices and employees in all 50 states and the District of Columbia. Plaintiffs, two former employees of IBM and the spouse of a former employee, are or were residents of Georgia. In late 1991 and early 1992, IBM offered to its employees certain early leave or retirement benefits in a program known as ITO-II. The program was "intended to help IBM become more competitive and efficient by reducing its work force and to assist employees who choose to participate in the program in making the transition into a new career or retirement." Employees who took part in ITO-II continued to be eligible for a pre-existing program for employees and their spouses, the "Retirement Education Assistance Program" (REAP). REAP offered reimbursement of up to a total of $2,500 each per employee and spouse for a course of study or training taken within three years after retirement. Subsequently, in December 1992, IBM suspended REAP benefits.

In December 1994, plaintiffs filed a complaint asserting causes of action for fraud and breach of contract. Plaintiffs allege that they were defrauded when IBM canceled REAP benefits after they took early leave or early retirement. Plaintiffs further allege that the REAP benefits were promised by IBM as part of the incentive for early leave or retirement and that IBM breached that promise when it canceled REAP. IBM denies that canceling REAP breached the ITO-II agreement.

The issue before this court concerns plaintiffs' motion for class certification. The proposed class would consist of those former IBM employees who participated in ITO-II and their spouses, who did not receive full REAP benefits due to its suspension. Proposed class members are residents of Alabama, California, Colorado, Florida, Georgia, Illinois, Indiana, Maryland, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, North Carolina, Ohio, Pennsylvania, Tennessee, Texas, Virginia, Washington, Wisconsin and the District of Columbia.

The trial court granted class certification, finding that the requirements of the class action statute, OCGA § 9-11-23, were met. Specifically, the trial court determined that the number of potential class members satisfied the numerosity requirement; that plaintiffs were adequate representatives of the class; that the superiority requirement was satisfied and that, because New York law would uniformly apply to the claims of all potential class members, the commonality requirement was met.

1. On appeal, IBM contends the trial court erred by granting class certification because New York law does not uniformly apply to all potential plaintiffs' claims and, as a result, the commonality requirement is not met. We will analyze the conflict of laws for the tort claim and the contract claim in turn.

## CONFLICT OF LAWS ANALYSIS

(a) IBM contends that the trial court erred by determining that New York law applied to fraud claims of all potential class members. We agree. The trial court properly determined that, for tort claims generally, Georgia applies the choice of law doctrine lex loci delictis. The trial court misapplied the doctrine of lex loci delictis to this case which involves a transitory tort. It is undisputed that the alleged fraud is of a transitory nature.

Under the rule of lex loci delictis, tort cases are generally governed by the substantive law of the place where the tort or wrong occurred. In torts of a transitory nature, the place of the wrong is the place where the last event occurred necessary to make an actor liable for the alleged tort.[1] *Wardell v. Richmond Screw Anchor Co.*, 133 Ga. App. 378, 380 (210 SE2d 854) (1974); *Risdon Enterprises v. Colemill Enterprises*, 172 Ga. App. 902, 903-904 (324 SE2d 738) (1984). As to the fraud claim, the substantive law will be governed by the state where the "last event" occurred.

The trial court ruled that New York law applied based on its determination that the last event necessary to establish liability for fraud was the decision to suspend REAP benefits, which occurred in New York. The decision to suspend REAP benefits was not, however, the last act necessary to establish liability for fraud. The elements of fraud are: "a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." *Crawford v. Williams*, 258

---

[1] See *Alexander v. Gen. Motors Corp.*, 219 Ga. App. 660 (466 SE2d 607) (1995), rev'd on other grounds, 267 Ga. 339 (478 SE2d 123) (1996) ("[t]he opinion by the Court of Appeals correctly states the choice of law principles applicable to this case"), vacated by 224 Ga. App. 238 (481 SE2d 7) (1997).

Ga. 806 (375 SE2d 223) (1989). Only fraud which results in damage is actionable. OCGA § 51-6-1. Thus, the "last event" necessary to make an actor liable for fraud is the injury, and consequently, for purposes of lex loci delictis, the place of the wrong is where that injury is sustained. This doctrine has been so applied in other jurisdictions. See *Mgmt. Science America v. NCR Corp.*, 765 FSupp. 738 (N.D. Ga. 1991) (fraud committed in state where economic loss occurred); *Steele v. Ellis*, 961 FSupp. 1458, 1463 (D. Kan. 1997) (applying Kansas law, the last event is the injury and the place of the wrong is where the loss is sustained); *Glass v. Southern Wrecker Sales*, 990 FSupp. 1344, 1347 (M.D. Ala. 1998) (same result when applying lex loci delictis under Alabama law); Restatement of Conflicts of Laws, § 377 (1934).

Potential class members here did not suffer injury at the moment IBM decided to suspend benefits, as plaintiffs urge. A former employee or spouse was not entitled to reimbursement under REAP until tuition had been paid. Thus, injury occurred only when a former employee or spouse felt the effect of IBM's decision, that is when IBM failed to reimburse tuition to those who would have qualified for reimbursement. This economic damage occurred in the state of residence of each potential class member at the time of such failure. Since the potential class members reside in a variety of states, the trial court erred in determining that New York law applied to the fraud claim of all potential class members. We do not address the merits of the underlying fraud claims.

(b) IBM contends that the trial court erred by determining that New York law applied to the contract claim of all potential class members. We agree.

Georgia courts apply the traditional lex loci contractus in contract actions.

> Under this approach, contracts are to be governed as to their nature, validity, and interpretation by the law of the place where they were made, except where it appears from the contract itself that it is to be performed in a State other than that in which it was made, in which case, the laws of that sister State will be applied. In order to determine where a contract was made, the court must determine where the last act essential to the completion of the contract was done.

(Citations and punctuation omitted.) *Gen. Tel. Co. &c. v. Trimm*, 252 Ga. 95 (311 SE2d 460) (1984). The trial court determined that all of IBM's actions occurred in New York and, as a result, New York was where the contract was made. However, the trial court failed to identify the last act essential to the completion of the ITO-II contract,

which may or may not have been an act of IBM. If, for example, the last act essential to the contract was the employee's acceptance of the terms thereof and this act was completed outside of New York, under those circumstances the contract would have been completed in the state where that act occurred. The laws of the state in which such acceptance occurred would apply to the contract, unless the contract provided otherwise. Also, the trial court failed to determine where the contract was to be performed, which fact could be determinative as to the controlling law on this claim.

Because the trial court did not reach the necessary factual determinations (it erred in determining that New York law applied to the contract claim of all potential class members), we are therefore unable to reach the issue on the record before us.

(c) Absent an appropriate factual basis, the trial court erred by finding the commonality requirement of the class action statute has been satisfied. We remand this case to the trial court to (1) make the required factual findings and determine the law governing the breach of contract claim and (2) determine whether, after applying the appropriate choice of law, the commonality requirement of the class action statute is met and whether class certification as prayed is proper.

2. IBM has raised as a defense that plaintiffs' claims are preempted because the state law claims relate to an Employee Retirement Income Security Act (ERISA) covered plan (parts of ITO-II). IBM contends that the trial court erred by granting class certification prior to determining whether plaintiffs' claims were preempted by federal law. In *Kemp v. Intl. Business Machines Corp.*, 109 F3d 708 (1997), the Eleventh Circuit Court of Appeals held that plaintiffs' claims were not sufficient to establish the complete preemption necessary to establish federal question jurisdiction. That court further stated that "[a]ny defensive preemption arguments [would] have to be decided, if at all, in state court." Id. at 714.

This court has previously addressed the priority of issue resolution and held: "[I]n determining the propriety of a class action, the first issue to be resolved is not whether the plaintiffs have stated a cause of action or may ultimately prevail on the merits but whether the requirements of [OCGA § 9-11-23] have been met." *Sta-Power Indus. v. Avant*, 134 Ga. App. 952, 954 (1) (216 SE2d 897) (1975). The trial court did not err by determining the propriety of the class action before addressing the merits of IBM's ERISA defense. See *Taylor Auto Group v. Jessie*, 241 Ga. App. 602 (527 SE2d 256) (1999).

*Judgment reversed in part, vacated in part and remanded. Eldridge and Barnes, JJ., concur.*

DECIDED JUNE 27, 2000.

*Powell, Goldstein, Frazer & Murphy, John F. Wymer III, Jacqueline E. Kalk*, for appellant.

*Browning & Tanksley, Jerry A. Landers, Jr., Hull, Towill, Norman, Barrett & Salley, David E. Hudson, William F. Hammond*, for appellees.