## A09A1692. LONG v. LONG et al.

(692 SE2d 811)

DOYLE, Judge.

Christine Denise Long appeals from the trial court's order in her pending divorce action. The Burke County Superior Court enjoined the Department of Human Resources and the Burke County Department of Family and Children Services (the "Department"), the temporary custodian of Long's minor children, from allowing the children to live with Long or to visit with her unsupervised and stayed the Burke County Juvenile Court from taking any action which would result in a contrary decision. We reverse because the juvenile court had prior jurisdiction over the temporary custody of Long's children in light of the ongoing deprivation action. Long also appeals the trial court's disposition of a discovery matter, which we affirm.

The record shows that Long's ten minor children were taken into the protective custody of the Department on July 31, 2008. A deprivation action with respect to the children was subsequently filed in the juvenile court.

In December 2008, the grand jury returned an indictment charging Long and her husband with ten counts of cruelty to children in the second degree and five counts of failure to educate. On February 16, 2009, Long filed a complaint for divorce in the superior court. On the afternoon of March 23, 2009, the State of

Georgia, acting through the District Attorney's Office of the Augusta Judicial Circuit (the "district attorney"), filed an amicus brief in superior court suggesting an "immediate third party custody transfer" of Long's minor children to the foster parents with whom the children were residing.

On March 24, 2009, the trial court held an emergency hearing to consider the amicus brief. The district attorney represented to the court that its office had received information that the Department intended to return four of Long's children to her custody, and that the district attorney objected to the return of the children to Long, "a defendant who is under indictment."[1] Long, through her attorney in the deprivation proceeding, represented that there was no proposal before the juvenile court for transfer of legal custody to Long, but only "physical placement with legal custody staying with [the Department]." Long's attorney also confirmed that there had been a finding of deprivation.

The Department's attorney represented that legal custody of the children was currently in the Department and that a hearing was scheduled in juvenile court that afternoon to consider the mother's request for physical placement of the four older children. The Department's attorney indicated that evidence would be presented in that proceeding, but he thought that the Department would have no objection to the four older children being placed with Long "for a period of time . . . to see how it goes." The trial court subsequently heard the testimony of the children's guardian ad litem in the deprivation action, who recommended against returning the children to Long during the pendency of the criminal charges.

In closing argument, the assistant district attorney represented that her office had brought its concerns to the trial court because "[t]he State doesn't feel like it has any other choice." The assistant district attorney admitted, however, that her office could pursue the protection of its interests within the context of the criminal proceedings, "which we are going to do." She also acknowledged that her office had considered going before the juvenile court, but she "fe[lt] like" a decision had been made in that court. Because the judge handling the criminal case was apparently unavailable, and because "there was an immediate need to do something because of [the pending juvenile court hearing]," she asked the trial court to act in the divorce proceeding.

The trial court ruled that it would restrain the Department from granting any kind of unsupervised custodial arrangement or place-

---

[1] According to the district attorney's procedural history, Long was free on bond pending resolution of the criminal case.

ment with Long. The same day, the trial court entered a handwritten order: (i) adding the district attorney and the Department as parties to the divorce action, (ii) appointing the district attorney as counsel for Long's minor children, (iii) enjoining the Department from "placing any of the parties' children to live with [Long] or visit with her unsupervised," (iv) staying any action of the juvenile court that would result in a decision contrary to the trial court's order, and (v) ordering that the existing foster parents continue in such capacity and be compensated by the Department at its customary rates. In separate orders, the trial court also appointed two guardians ad litem to represent the children's best interests in the divorce action and to determine the manner and frequency of supervised visitation between Long and her children.[2]

1. The district attorney has moved to dismiss this appeal on the ground that Long had no right of direct appeal. We disagree.

In explaining why it acted, the trial court expressed its disagreement with the Department's recommendation to reunite Long with her children while the criminal charges were pending and stated that "[i]t is this judge's opinion that that should not happen." The trial court based its authority to act on its custody jurisdiction. Because the March 24, 2009 order modified the custody of Long's children, the order was directly appealable under OCGA § 5-6-34 (a) (11) and was not subject to the interlocutory or discretionary appeal procedures.[3]

2. Long argues that the trial court erred when it enjoined the Department's actions by prohibiting it from placing the children with Long or allowing them to visit with her unsupervised and by staying any decision of the juvenile court that would be contrary to its order. We agree.

The superior court has broad powers to determine matters of custody during the pendency of a divorce action. The court may "hear and determine who shall be entitled to the care and custody of the children until the final judgment in the case."[4]

---

[2] The record includes orders filed on April 16, 2009, and Long assigns error to these orders to the extent they also prohibit the Department from granting unsupervised custody or placement of the children with Long. The April 16, 2009 orders were entered subsequent to the notice of appeal, which was filed on April 6, 2009, and therefore cannot be enumerated as error. See *Bloomfield v. Bloomfield*, 282 Ga. 108, 112 (5) (646 SE2d 207) (2007). However, "[a] notice of appeal divests the trial court of jurisdiction to alter a judgment while appeal of that judgment is pending." (Punctuation omitted.) *Teal v. State*, 282 Ga. 319, 329 (7) (647 SE2d 15) (2007).

[3] See *Martinez v. Martinez*, 301 Ga. App. 330, 331-332 (1) (687 SE2d 610) (2009); *Taylor v. Curl*, 298 Ga. App. 45 (679 SE2d 80) (2009); *Moore v. Moore-McKinney*, 297 Ga. App. 703, 704-707 (1) (678 SE2d 152) (2009).

[4] OCGA § 19-6-14.

> The authority of the presiding judge, frequently referred to as plenary, to control the custody of minor children . . . pending a divorce suit between their parents is very broad, so that in the exercise of sound discretion the judge may from time to time, until the final decree is entered, modify his orders in this respect and transfer the possession of the children from the persons to whom custody was originally granted and commit them into the care of other and different parties.[5]

Although a deprivation action was pending before the juvenile court when the trial court acted in this case, and "[t]he juvenile courts of this state have exclusive original jurisdiction with regard to any child who is alleged to be deprived,"[6] this did not divest the superior court of its exclusive jurisdiction over the divorce action[7] or, by extension, its statutory authority to determine temporary custody until final judgment. By analogy, we have previously found that the superior court retained its jurisdiction over a child's adoption notwithstanding the ongoing deprivation proceeding with respect to the child in the juvenile court.[8]

The trial court had jurisdiction over the temporary custody of Long's children. However, the juvenile court in the contemporaneous deprivation proceeding "had the authority to order disposition best suited to the needs of the children, including the transfer of temporary legal custody."[9] Although a deprivation proceeding is brought "to determine whether the child is deprived and is not an action brought to decide custody matters concerning the child," the juvenile court is authorized to assign temporary custody of a deprived child.[10]

In light of the foregoing, and under these peculiar circumstances, the superior court and the juvenile court had concurrent jurisdiction over the temporary custody of Long's children. As a basic principle, however, "[w]here law and equity have concurrent jurisdiction, whichever first takes jurisdiction shall retain it, unless a

---

[5] (Citations omitted.) *Graham v. Graham*, 219 Ga. 193, 193-194 (1) (132 SE2d 66) (1963).

[6] (Punctuation omitted.) *Lewis v. Winzenreid*, 263 Ga. 459, 461 (435 SE2d 602) (1993). See OCGA § 15-11-28 (a) (1) (C).

[7] Ga. Const. of 1983, Art. VI, Sec. IV, Par. I.

[8] See *Snyder v. Carter*, 276 Ga. App. 426, 427-428 (623 SE2d 241) (2005); *Edgar v. Shave*, 205 Ga. App. 337, 338 (1) (422 SE2d 234) (1992).

[9] (Punctuation omitted.) *In the Interest of A. L. L.*, 211 Ga. App. 767, 767-768 (2) (440 SE2d 517) (1994).

[10] (Punctuation omitted.) Id. at 767 (1). The juvenile court may also place the child before the actual adjudication of the deprivation petition. See OCGA §§ 15-11-39.2; 15-11-48 (f).

good reason shall be given for the interference of equity."[11] Here, the juvenile court had already exercised its jurisdiction over the temporary custody of Long's children in light of the deprivation action, and we cannot conclude that the superior court had good reason to interfere.

At the hearing, the trial court expressed its concern "about the fact that [the Department] would recommend that these children be reunited with their mother pending the criminal charges," and that "I'm not sure the interests of the children are being adequately protected." The trial court accordingly found reason to exercise its jurisdiction notwithstanding that the "matter of the child[ren] originated in the juvenile court." However, at the hearing the trial court was apprised that at 1:30 p.m. on *the same day* the juvenile court was scheduled to hear a motion for the physical placement of the four children with Long. Thus, the children had not been placed with Long, and such placement would not occur without the knowledge of the juvenile court, whose primary responsibility was to consider the welfare of the children.[12] Further, although the trial court expressed its concern about the Department's decision to recommend the four children be physically placed with the mother, the juvenile court was competent to oversee the Department.

Under OCGA § 15-11-55 (c), "[n]otwithstanding any other provision of law," the juvenile court is authorized to "conduct sua sponte a judicial review of the current placement plan being provided to said child" and can order that custody be placed outside the Department.[13] Further, "[p]lacement or a change of legal custody by the court outside the Department . . . shall relieve the [D]epartment of further responsibility for the child so placed."[14] With respect to a disposition of a child by the juvenile court, any transfer of temporary legal custody must provide that "the court shall approve or direct the retransfer of the physical custody of the child back to the parents. . . . Any such retransfer of physical custody may be made subject to . . . supervision for the protection of the child."[15] We cannot find any "good reason" for the trial court to conclude that it was in a better position to address the Department's placement decisions than the juvenile court.[16]

---

[11] OCGA § 23-1-5.

[12] See *Gardner v. Lenon*, 154 Ga. App. 748, 749-750 (270 SE2d 36) (1980).

[13] OCGA § 15-11-55 (c).

[14] Id.

[15] OCGA § 15-11-55 (a) (2) (A).

[16] See *Seckinger v. C & S Nat. Bank*, 213 Ga. 586, 587 (3) (100 SE2d 587) (1957) (no good reason is shown for interference of equity in the pending law case); *Taylor v. Abbott*, 201 Ga. 254, 255 (4) (39 SE2d 471) (1946) (no reason "why the superior court should deprive the court

As to the adequate protection of the children's interests in the juvenile court, the evidence showed that with respect to those proceedings Long's children were represented by a guardian and a court appointed special advocate.[17] The children were in the custody of the Department, which in turn was represented by counsel, and as we have found this to be sufficient legal representation of children in termination proceedings, we cannot say that the legal representation of the children was facially inadequate as to the deprivation proceeding, notwithstanding that the trial court disagreed with the Department's placement decision.[18]

While it might be argued that the imposition on the juvenile court was small, in that the trial court left legal custody with the Department and only stayed any juvenile court action inconsistent with the order of the trial court, the trial court's determination was fundamentally inconsistent with the authority of the juvenile court under OCGA § 15-11-55 to order disposition of a deprived child and its obligations under OCGA § 15-11-58 to oversee reasonable efforts to reunify families.[19] The trial court's order also infringed upon the Department's authority to determine the physical placement of children within its custody.[20]

We express no opinion as to whether it would have been proper to return Long's children to her physical custody or to allow her unsupervised visitation under the circumstances of this case, only that the decision should have been made by the Department under the supervision of the juvenile court, which was scheduled to consider the issue within a matter of hours when the trial court issued its injunction. We find that the trial court erred in staying the actions of the juvenile court and enjoining the Department as to the placement and visitation of the children.

3. Long claims that the trial court erred in allowing the district

---

of ordinary of its jurisdiction"). Compare *Duke v. Duke*, 181 Ga. 21, 22-23 (181 SE 161) (1935) (superior court properly enjoined habeas corpus proceeding in court of ordinary).

[17] The guardian testified at the hearing that she had made it clear to the Department that "it would never be my recommendation for the children to be returned as long as criminal charges are pending."

[18] See OCGA § 15-11-6 (b); *Williams v. Dept. of Human Resources*, 150 Ga. App. 610, 611 (2) (258 SE2d 288) (1979). The district attorney's office argued that the positions of the children and the mother were in conflict as to "some issues that the mother has raised against the father" in the divorce action, but that does not logically show the children lacked adequate legal representation before the juvenile court.

[19] For example, under OCGA § 15-11-55 (a), if a child is found to be deprived,
. . . the court may make any of the following orders of disposition best suited to the protection and physical, mental, and moral welfare of the child: (1) Permit the child to remain with his or her parents, guardian, or other custodian, including a putative father, subject to conditions and limitations as the court prescribes, including supervision as directed by the court for the protection of the child. . . .

[20] See *In the Interest of A. N.*, 281 Ga. 58, 59 (636 SE2d 496) (2006).

attorney's office to intervene and in making the district attorney and the Department parties to the divorce action. We agree.

Although the district attorney did not request to intervene in the divorce action in its amicus brief, the trial court construed the brief as a motion to intervene, granted the motion under OCGA § 9-11-24, and added the district attorney as a party. The trial court, sua sponte, also added the Department as a party. Pretermitting whether these actions would have been proper if the trial court had acted correctly in asserting its jurisdiction over the temporary custody of Long's children, because we have found that the trial court erred in so doing, and because the district attorney and the Department were only interested in the temporary custody of the children, the trial court abused its discretion in allowing the district attorney to intervene and in adding the district attorney and the Department as parties to Long's divorce action.[21]

4. Long further claims that the trial court erred in appointing the district attorney as attorney for the children. The record shows that subsequent to its appointment, the district attorney, believing that it may have a conflict of interest in representing the children while "currently engaged in the active prosecution of a criminal case involving the parties to this action," moved the trial court to appoint The Prosecuting Attorneys' Council of the State of Georgia as attorneys for the minor children, and the trial court granted the motion. As to the appointment of the district attorney, which is the act of the trial court enumerated as error, the district attorney was relieved of any duty in that respect, and so the claim is moot.

5. Long also contends that the trial court erred in considering certain ex parte communications from the district attorney and the guardian ad litem and in considering a written report containing hearsay. Because we find that the trial court erred in exercising its jurisdiction over the temporary custody of Long's children, these issues are moot.[22]

6. Long claims the trial court erred in delegating its power to set the terms of visitation with the guardians ad litem appointed to represent the children's interests in the divorce action. In light of our

---

[21] See OCGA §§ 9-11-19; 9-11-20; 9-11-24. See generally *Gregory v. Tench*, 138 Ga. App. 219, 220 (1) (a) (225 SE2d 753) (1976) ("if the one who seeks to intervene will still be left with his right to pursue his own independent remedy against the parties, regardless of the outcome of the pending case, then he has no interest that needs protecting by intervention and should not be allowed to intervene over objection"). Compare *Gardner v. Gardner*, 276 Ga. 189, 190 (576 SE2d 857) (2003) ("Because equity seeks always to do complete justice, third parties are properly joined in a divorce action so as to facilitate resolution of the spouses' marital claims.") (punctuation omitted).

[22] In light of our disposition of this case, Long's motion for stay or supersedeas of the trial court's order is moot. Long's motion to deny supplementation of the record is denied.

findings in Division 2, we agree.

7. Lastly, Long contends that the trial court erred in unilaterally limiting discovery in the divorce case by prohibiting the taking of oral depositions by any party without leave of court. We disagree. "The powers of the trial court to control the time, place, scope and financing of discovery are to be construed broadly, and are not to be interfered with absent a clear abuse of discretion."[23] By restricting discovery, Long and her husband could not be unilaterally placed in the position of being asked to divulge information against their interests in the pending criminal matter.

*Judgment affirmed in part and reversed in part. Blackburn, P. J., and Adams, J., concur.*

DECIDED MARCH 29, 2010.

*John R. B. Long*, for appellant.

*Ashley Wright, District Attorney, Kristina G. Connell, Geoffrey L. Fogus, Charles R. Sheppard, Assistant District Attorneys, Thurbert E. Baker, Attorney General, Shalen S. Nelson, Senior Assistant Attorney General, Elizabeth M. Williamson, Assistant Attorney General, Glover & Blount, Gary A. Glover, Jerry M. Daniel, Edward J. Flythe*, for appellees.

---

[23] (Citation omitted.) *Orkin Exterminating Co. v. McIntosh*, 215 Ga. App. 587, 589 (3) (452 SE2d 159) (1994).